**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION**

**STACEY B. McKINNEY #155499,**

**Plaintiff,**

**vs.**

**SMALLWOOD PRISON DENTAL SERVICES, ET AL.,**

**Defendants.**

**Case No. 2:08-CV-90-NEF**

**RESPONSE OF DEFENDANT EL-CID V. BURKETT, D.D.S. TO COURT'S ORDER ENTERED APRIL 25, 2008 (DOC. 27)**

COMES NOW the Defendant, El-Cid V. Burkett, D.D.S., by and through the undersigned counsel, and in response to the Court's Order of April 25, 2008 [Doc. 27], states as follows:

## I. NARRATIVE STATEMENT OF UNDISPUTED FACTS.

### A. Procedural History.

Plaintiff, Stacey B. McKinney ("McKinney"), an inmate incarcerated at the Bullock County Correctional Facility located in Union Springs, Alabama, instituted this action on February 8, 2008. (See Complaint). In the initial Complaint, McKinney alleged that sometime in either October or November, 2007, he had his teeth cleaned at the Bullock County Correctional Facility. The original Complaint alleged that McKinney was seen by a dental hygienist by the name of Tracy Arochie [sic] (Tracy Archie). McKinney alleged in his original Complaint that after his visit with the dental hygienist, he began experiencing pain and bleeding in his gums. The Complaint alleged that after

being seen and treated by the dental hygienist, McKinney was seen by Dr. El-Cid Burkett and was allegedly informed that Ms. Archie had been fired due to the fact that she did not have a license to practice dental hygiene. (Id.).

The original Complaint stated that McKinney was suing Smallwood Prison Dental Services for contracting with a dental hygienist that was not licensed. The original Complaint stated that McKinney was making claims against Tracy Archie for acting as a licensed professional and causing him injury. The original Complaint stated that McKinney was **not** suing Dr. Burkett, but only requesting a copy of his dental file and the name and address of Smallwood Prison Dental Services. (Id.).

On February 26, 2008, the Court entered an Order requesting a response to the Plaintiff's original Complaint. A response was filed on behalf of Dr. Burkett on April 10, 2008, attaching a copy of an affidavit from Dr. Burkett and McKinney's dental records [Doc. #13]. On April 23, 2008, McKinney filed a Motion to Amend his Complaint. McKinney's Amended Complaint, alleged that Dr. Burkett had taken impressions of McKinney's teeth for upper partials. However, according to the Amended Complaint, after the original Complaint was served, Dr. Burkett allegedly told McKinney that he did not qualify for the partials and, in retaliation for filing the original Complaint, Dr. Burkett allegedly failed to provide the Plaintiff with partials. (See Amended Complaint).

On April 28, 2008, this Court entered an Order stating that on or before June 2, 2008, Dr. Burkett was to file a response to the Plaintiff's Amended Complaint addressing the issues as to whether the Plaintiff's Amended Complaint, wherein Plaintiff was allegedly denied needed partials, was valid. (Court Order, April 28, 2008 [Doc. 27]).

**B.    Plaintiff's Medical Treatment at Bullock County Correctional Facility Pertaining to the Subject Partials.**

On January 9, 2008, McKinney was seen by Dr. Burkett in the dental facility of the Bullock County Correctional Facility and was fitted for upper partials due to missing teeth, specifically at locations 5, 6, 12 and 13. (Affidavit of El-Cid V. Burkett, D.D.S., attached hereto as Exhibit 1). On January 21, 2008, impressions taken from McKinney's mouth for the subject partials were sent to the lab to be made for McKinney. (Id.). McKinney returned to the dental facility on February 11, 2008, to be fitted for the partials. However, the partials did not fit correctly and, therefore, further models were made for the upper partials for McKinney. (Id.). The second models for McKinney's upper partials have been forwarded to the lab and are currently in the process of being made. (Id.). Once the partials have been returned to the dental facility at the Bullock County Correctional Facility, McKinney will be fitted with the partials. (Id.). Copies of the relevant medical records pertaining to McKinney's partials are attached as Exhibit A to the Affidavit of Dr. Burkett. McKinney's partials were ordered prior to the lawsuit being filed and are currently in the process of being made for McKinney. (Affidavit of Burkett).

## II.    DISCUSSION

**A.    Plaintiff's Purported § 1983 Claim Against Dr. El-Cid Burkett is Fundamentally Flawed.**

McKinney's Amended Complaint includes passing references to both "deliberate indifference" and "medical malpractice." By virtue of those references, it appears that

McKinney is attempting to claim that Dr. Burkett allegedly violated his rights under the Eighth Amendment.

In Estelle v. Gamble, 429 U.S. 97 (1976), the United States Supreme Court first inferred a prisoner's "rights" to necessary medical care from the text of the Eighth Amendment. In reaching this conclusion, the Estelle court held that the prohibition against cruel and unusual punishment in the Eighth Amendment prohibits prison officials from acting with "deliberate indifference" with regard to prisoner's serious medical needs. 429 U.S. at 104. Since Estelle, the courts have routinely recognized that the Eighth Amendment[1] to the United States Constitution governs the conditions of confinement for prisoners and the treatment of these prisoners during the term of their incarceration. Farmer v. Brennan, 511 U. S. 825, 832 (1974) (quoting Helling v. McKinney, 509 U. S. 25, 31 (1993)); see also Whitley v. Albers, 475 U. S. 312, 327 (1986); Rhodes v. Chapman, 452 U. S. 337, 345-46 (1981).

An alleged claim of "deliberate indifference" under the Eighth Amendment may be actionable under 42 U.S.C. § 1983.[2] See Graham v. Connor, 490 U. S. 386, 393-94 (1989)(recognizing that § 1983 is not a source of "any substantive right," but rather

---

[1] Though liability arising out of the treatment of pretrial detainees triggers Fourteenth Amendment considerations, "the minimum standard for providing medical care to a pretrial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner . . . ." See Hahn v. DeKalb Co., 774 F.2d 1567, 1573-74 (11th Cir. 1985). The extent CMS relies upon any cases addressing the application of the Fourteenth Amendment in a prison context, such cases are equally applicable in this case.

[2] 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state of territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, sued in equity, or other proper proceedings for redress . . . .

provides a means for "vindicating federal rights elsewhere conferred."). Every claim by a prisoner that he has not received adequate medical treatment does not state a violation of the Eighth Amendment. McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999). The courts have devoted an extraordinary amount of time in clearly defining the requirements for asserting and succeeding upon an Eighth Amendment claim under § 1983. Both the Supreme Court and the Eleventh Circuit have described the Eighth Amendment standard of deliberate indifference as requiring allegations and evidence of both "objective" and "subjective" components. See e.g. Farmer, 511 U. S. 825 at 834-837; Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004).

The "objective" component of the Eighth Amendment analysis requires a prisoner to demonstrate the existence of a condition, act or omission which is sufficiently egregious to violate the Eighth Amendment. See Hudson v. McMillan, 503 U.S. 1, 8 (1992). The underlying conduct or condition must be "extreme" and pose "unreasonable risk of serious damage to his future health," if left unchecked. Chandler, 379 F.3d at 1289-90 (quoting Hudson, 503 U. S. at 9) (other citations omitted). At a minimum, a prisoner must allege and establish the existence of "a serious medical need." Chandler, 379 F.3d at 1289-90; Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eleventh Circuit's longstanding definition of "serious medical need" is a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See e.g. Farrow, 320 F.3d at 1243 (citing Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)). Additionally, the serious medical

need must be such that, if left untreated, "Pos[es] a substantial risk of serious harm." Farmer, 511 U. S. at 834. The burden falls squarely upon plaintiff to allege and ultimately establish the existence of a serious medical need. See e.g. Hamm v. DeKalb Co., 774 F.2d 1567 (11th Cir. 1985).

Even assuming plaintiff successfully identified and established the existence of a "serious medical need," he must also establish the "subjective" component of an Eighth Amendment violation. Plaintiff must prove Dr. Burkett has acted and continues to act with "deliberate indifference." See, e.g., Farmer, 511 U. S. at 837. This subjective component requires evidence that the defendant possessed actual knowledge of "an excessive risk to the inmate's health or safety" and disregarded and continue to disregard that risk. Id. at 837. Evidence demonstrating the defendant failed "to alleviate a significant risk that [he] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" or serve as a basis for a claim of deliberate indifference. Burks v. Sikes, 169 F.3d 1353, 1363-1364 (11th Cir. 1999) (other citations omitted); see also, Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996) (holding, "[t]here is no liability for 'an official's failure to alleviate a significant risk they should have perceived but did not . . . .'" (quoting Farmer, 511 U. S. at 838)). The court summarized this component as requiring evidence of a "subjectively sufficiently culpable state of mind." Id. at 1491 (other citations and internal quotations omitted).

It is incumbent upon a prisoner asserting a § 1983 claim to establish "conscious or callous indifference" on the part of the prison official. See, e.g. Daniels v. Williams, 474

U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990). For example, a prisoner's § 1983 claim for inadequate medical treatment cannot survive summary judgment unless and until the inmate produces evidence (of the prison official's subjective awareness) of the alleged medical condition and an "intentional refusal [by the official] to provide . . . care." Id.; Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shaw, 87 F.3d 1266, 1269 (11th Cir. 1996); Hill, 40 F.3d at 1186). Without evidence of this "specific intent," a prison's § 1983 claim cannot succeed. Steele, 87 F.3d at 1269.

The courts have devoted a significant amount of time identifying the specific types of allegations which **do not** give rise to the claim of "deliberate indifference." In declaring the "deliberate indifference" standard for the first time, the Estelle court wrote, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." 429 U.S. at 106. The Eleventh Circuit in Chandler held a prison's discomfort does not give rise to an Eighth Amendment violation. 379 F.3d at 1295 (citations omitted). Applying Estelle, the Eleventh Circuit also noted that a complaint that prison medical staff should have done more to diagnose and/or treat a prisoner is "at most . . . medical malpractice." Campbell, 169 F.3d at 1363. Indeed, the Eighth Amendment does not prohibit or provide any remedy for any "accidental inadequacy . . . or even medical malpractice actionable under state law." Taylor v. Adams, 221 F.3d 2154, 2158 (11th Cir. 2000) (quotations and omissions and citations omitted). For this

reason, medical decisions not to or when to provide certain types of medical treatment, such as an x-ray are not actionable as a matter of law under the Eighth Amendment. Id.

In instances where inmates acknowledge treatment but contest the manner in which treatment is provided, courts have applied an altered analysis of claims involving requests for different or alternative types of medical treatment. When an inmate claims "different treatment should have been provided," such a claim "is tantamount to a medical judgment call," not an Eighth Amendment violation. McElligott, 182 F.3d at 1295. In greater detail, the Eleventh Circuit explained in Hamm:

> Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference. See Bass v. Sullivan, 550 F.2d 229, 231-32 (5th Cir., cert. denied, 434, U.S. 864, 98 S. Ct. 195, 54 L. ed. 2d 138 (1977); accord, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (First Cir. 1981) ("where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims that are sound in tort law.")

774 F.2d at 1575. Accordingly, in instances where prisoners request different medical treatment, prisoners must overcome a much greater threshold in order to state and/or succeed upon such a § 1983 claim.

In the present action, McKinney's complaint against Dr. Burkett arises solely out of Dr. Burkett's alleged failure to fit McKinney with partials. McKinney claims that he has not been provided partials by Dr. Burkett in retaliation for filing the original Complaint. However, the attached Affidavit and medical records attached thereto illustrate that McKinney was fitted for the subject partials and they are in the process of

being refitted, and McKinney continues to receive treatment regarding the subject partials.

In other words, Plaintiff's complaints fall squarely within the ambit of those claims prohibited by Hamm, i.e., claims that attempt to "second guess medical judgment." There is simply no evidence that plaintiff was ever denied any treatment, refused any treatment, or told he would not receive any treatment of any kind, which was necessary at that time. Plaintiff's dissatisfaction with his treatment is of no consequence under § 1983. The evidence demonstrates that, on each occasion, plaintiff requested evaluation by the medical staff, such a evaluation has been provided. Accordingly, there is no evidence to substantiate any claim that Dr. Burkett has acted with deliberate indifference towards the Plaintiff at any time.

McKinney "has no constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel." McLaughlin v. Darbouze, 2007 WL 484550 (M.D. Ala.) citing Hudson v. McMillan, 503 U.S. 1, 9 (1972) ("society does not expect that prisoners will have unqualified access to health care"). "Further, to the extent plaintiff's claims is based upon his own disagreement with the prison medical staff about his medical treatment, such claim does not amount to deliberate indifference." Id., citing Estelle, 429 U.S. at 107; Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

In McKinney's present motion for relief, he fails to come forward with any evidence showing that the defendant knew the manner in which McKinney was being

treated created a substantial risk to him and that the defendant disregarded that risk. In the absence of such a showing, McKinney's motion for relief is due to be denied and his complaint is due to be dismissed. See McLaughlin, 2007 WL 484550 (M.D. Ala.).

McKinney "has no constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical provider." McLaughlin v. Darbauze, 2007 WL 484550 (N.D.Ala.). "Further, to the extent the plaintiff's claims are based on his own disagreement with the prison medical staff about his medical treatment, such claims do not amount to deliberate indifference." Id.

**B. Plaintiff Fails to State any Claim Against the Defendant for Medical Malpractice.**

In addition to any claims for "deliberate indifference" the Plaintiff does not have any claim for "medical malpractice" against the defendant. An action for a medical malpractice is construed and governed by the Alabama Medical Liability Act ("AMLA"), Ala. Code § 6-5-541 et seq. (1975). The AMLA applies to "any action for injury or damages or wrongful death, whether in contract or in tort, against a healthcare provider for McKinney of the standard of care." See Ala. Code § 6-5-548(a), and defines the "standard of care" owed by physicians. See Ala. Code § 6-5-541(2).

In addition to the pleading requirements set forth in Rule 8(a) of the Alabama Rules of Civil Procedure, the AMLA[3] imposes a heightened pleading requirement upon

[3] The AMLA applies to "healthcare provider[s]," which includes any "medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other healthcare provider as those terms are defined in § 6-5-481." Ala. Code § 6-5-542(1) (1975). Ala. Code § 6-5-481 defines "other healthcare providers" as including any "professional corporation or any person employed by physicians, dentists, or hospitals who are

persons attempting to seek redress under the act such as Plaintiff. Ala. Code § 6-5-551 states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a healthcare provider for McKinney of the standard of care, whether resulting from acts or omissions in providing healthcare, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the perimeters of discovery in all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the healthcare provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be at least ninety (90) days before trial. **A complaint which fails to include such detailed specification and factual description of each act or omission shall be subject to dismissal for failing to state a claim upon which relief may be granted.** Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission.

(Emphasis applied).

The requirements of § 6-5-551 are clear and specific regarding the matters which must appear in a complaint asserting a claim under AMLA. Indeed, § 6-5-551 mandates that any complaint failing to comply with this heightened pleading requirement "shall be subject to dismissal for failing to state a claim upon which relief may be granted." Moreover, courts interpret this requirement as mandating that a complaint asserting an AMLA claim "focused . . . on the individual practitioner who specific action is alleged to have fallen below the standard of care." Husby v. South Alabama Nursing Home, Inc.,

---

directly involved in the delivery of healthcare services." Ala. Code § 6-5-481(8) (1975). Plaintiff's complaint is devoid of any mention as to whether CMS or any of its independent contractors or employees fall within the category of persons governed by the AMLA.

712 So.2d 750, 753 (Ala. 1998). Considering all of these requirements, Plaintiff's Complaint and Motion for Relief fail to provide the level of factual detail necessary to institute and/or maintain any action under the AMLA. Therefore, Plaintiff's Complaint and Motion for Relief fail.

Under Rule 56 of the *Alabama Rules of Civil Procedure*, summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ala. R. Civ. P.* 56(c)(3). In the specific context of a medical malpractice action, such as the present, Alabama courts follow a more specialized procedure:

> [O]nce the defendant offers expert testimony in [its] behalf (albeit [its] own opinion), establishing lack of negligence, the defendant is entitled to summary judgment, unless the plaintiff counters the defendant's evidence with expert testimony in support of the plaintiff's claim." Pettigrew v. Leroy F. Harris, M.D., P.C., 631 So. 2d 839 (Ala. 1993). See also Ala. Code § 6-5-548 (outlining plaintiff's burden of proving defendant's negligence by way of expert testimony from similarly situated health care providers); and §6-5-549 (substantial evidence is standard of proof required for summary judgment motion).

Dr. Burkett, in his Affidavit, fully set forth that the care and treatment provided to McKinney has been appropriate and with the standard of care. (Affidavit of Dr. El-Cid Burkett).

The Defendant's submissions shift the burden to McKinney to produce substantial evidence in the form of competent expert testimony that the care and treatment of McKinney fell below the applicable standard of care. See e.g., Swendson v. Gross, 530 So. 2d 764 (Ala. 1988) (in a professional malpractice case, once the defendant offers expert testimony in his behalf establishing a lack of negligence, the defendant is entitled

to summary judgment unless the plaintiff counters the defendant's evidence with expert testimony in support of the plaintiff's claim); Ala. Code § 6-5-549. The only proper expert testimony before the trial Court regarding the Plaintiff's allegations of substandard care against this Defendant is the Affidavit of Dr. El-Cid Burkett which affirmatively establishes that he has not caused or contributed any problems being alleged by McKinney.

This Defendant's submissions shift the burden to McKinney to come forward with competent medical expert testimony on the element of causation. That is, McKinney has to produce substantial evidence that the alleged failure to comply with the standard of care "probably caused the injury or death in question." Ala. Code § 6-5-549. The undisputed expert testimony before the Court is that Dr. Burkett has treated McKinney within the standard of care.

Under the Alabama Medical Liability Act (AMLA), the Defendant is under a duty to "exercise such reasonable care, diligence and skill as [health care providers] ... in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case." Ala. Code § 6-5-484(a); Keebler v. Winfield Carraway Hospital, 531 So.2d 841 (Ala. 1988); Fain v. Smith, 479 So.2d 1150 (Ala. 1985). Furthermore the Alabama Supreme Court has repeatedly held that "[i]t is well settled that when the defendant in a medical malpractice case moves for summary judgment and makes the requisite *prima facie* showing of non liability: ... the plaintiff, in order to avoid the entry of summary judgment, ... must present substantial evidence indicating that the alleged negligence ... probably caused the injury." Ala. Code § 6-5-548. See also Dews v.

Mobile Infirmary Association, 659 So.2d 61 (Ala. 1995); McAffee v. Baptist Medical Center, 641 So.2d 265 (Ala. 1994).

Under Alabama law, except when the act or omission complained of is within the understanding of the average layman, or when a plaintiff relies on an authoritative medical treatise or is himself or herself a qualified expert; the plaintiff in a medical malpractice action must present expert testimony "to establish the degree of care, skill and diligence used by similarly situated healthcare providers in the same general line of practice." Ex parte Health South Corp., 2002 WL 31663618 (Ala.); Leonard v. Providence Hospital, 590 So.2d 906 (Ala. 1999); See also Pruitt v. Zeiger, 590 So.2d 236 (Ala. 1991). McKinney has to present expert testimony establishing that Dr. Burkett breached the standard of care and "a proximal causal connection between the ... act or omission constituting the breach and the injury sustained by the plaintiff." Pruitt at 238 (*citing* Bradford v. McGee, 534 So.2d 1076 (Ala. 1998).

Ala. Code § 6-5-548, the Alabama Medical Liability Act (AMLA), sets forth the Plaintiff's burden of proof in a medical malpractice action. A medical malpractice plaintiff has the burden of proving by substantial evidence that the defendant health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case. See Ala. Code § 6-5-548(a). A "similarly situated health care provider" is defined by the AMLA. See Id. § 6-5-548(b). To be considered a "similarly situated health care provider," the individual must have "practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of

standard of care occurred." See Id. § 6-5-548(b)(3). A health care provider may testify as an expert witness in a medical malpractice action only if he is a similarly situated health care provider. See Id. § 6-5-548(e).

There is no dispute, based upon the facts as pled in the Plaintiff's Complaint, that McKinney has been seen and treated by Dr. El-Cid Burkett at the Bullock County Correctional Facility and continues to receive hands on treatment at the facility.

**C. McKinney has Failed to Follow the Required Grievance Procedures for Assessing Medical Complaints Prior to Filing his Lawsuit, Therefore, the Prison Litigation Reform Act of 1995 Requires the Immediate Dismissal, With Prejudice, of His Complaint.**

The Bullock County Correctional Facility has in place a grievance mechanism that allows inmates the opportunity to submit health services complaints and receive a reasonable response to their complaint within a timely manner. A copy of the grievance mechanism is attached as Exhibit B to the Affidavit of Dr. Burkett (Exhibit 1). McKinney has at no time filed any grievance with Dr. Burkett or Correctional Medical Services, Inc., regarding the issues raised in his Amended Complaint. (See Affidavit of Dr. Burkett).

Prisoner litigation has become an expensive problem for states and the federal government. Because of the problems associated with frivolous litigation, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in order to control frivolous prisoner lawsuits. The Act contains multiple and mandatory provisions that require the dismissal of Complaints identical to those asserted by McKinney.

The PLRA defines prisoners as follows:

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. 42 U.S.C. § 1997(e)(h).

McKinney admits to being incarcerated in his Complaint and, therefore, meets the definition of "prisoner" as defined by the PLRA. See Boyd v. Corrections Corp. of America, 380 F.3d 989 (6th Cir. 2004).

The PLRA requires a prisoner to exhaust all internal, administrative remedies prior to filing suit. The PLRA requires that the court on its motion or the motion of a defendant dismiss any action with respect to prisoner conditions or medical treatment upon failing to exhaust these remedies. 42 U.S.C. § 1997(e)(a). Those provisions state as follows:

> (a) Applicability of administrative remedies.
>
> No action shall be brought with respect to prison conditions under § 1983 of this title, only under federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
>
> (b) The failure of state to adopt or adhere to administrative grievance procedure.
>
> The failure of a state to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under 1997(a) or 1997(c) of this title.
>
> (c) Dismissal
>
> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility if the court is satisfied that the action is frivolous,

> malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

42 U.S.C. § 1997(e)(a).

"Administrative remedies" pursuant to this Act constitute prison or jail grievance procedures such as those identified in this Special Report. Before filing suit, the prisoner/plaintiff must submit his claim through this procedure and the grievance must address the specific issue upon which the suit is based. Failure to strictly follow these procedures requires dismissal of the action. Even if the prisoner/plaintiff has no knowledge regarding the existence of the procedures, this does not relieve the requirement. See Zolicoffer v. Scott, 55 F. Supp. 2d 1372 (N.D.Ga. 1999), Aff'd without opinion 252 F.3d 440 (11th Cir. 2001)).

In this particular case, McKinney has failed to follow the available, required administrative procedures that exist at the Bullock County Correctional Facility located in Union Springs, Alabama. These procedures require McKinney to seek administrative relief of his claim before seeking court intervention regarding his claim. His failure to follow these internal procedures concerning his medical grievance require his claim to be dismissed with prejudice. Woodford v. NGO, 126 S.Ct. 238 (2006).

McKinney must exhaust all internal administrative remedies before seeking redress for his complaints within the legal system. Adhering to these procedures serves a two-fold interest: (1) allows Breach the opportunity to advise correctional officers or healthcare employees regarding his concerns; and (2) it permits internal procedures to address and alleviate concerns raised by prisoners through this process. More

importantly, it eliminate frivolous litigation by giving both prisoner and the correctional facility the opportunity to be aware of complaints and address them prior to expensive litigation.

**CONCLUSION**

McKinney's Amended Complaint and Motion for Relief are due to be denied and dismissed due to the fact that it is disproved by the evidence before the Court. The Plaintiff's requests for relief are without merit. The Defendant, Dr. El-Cid Burkett, has demonstrated with substantial evidence and appropriate precedent that there is no genuine issue of material fact related to any violation, constitutional or otherwise, and that he is, therefore, entitled to judgment in his favor as a matter of law. The Plaintiff's submissions clearly fail to meet the Plaintiff's required proof.

Accordingly, Dr. Burkett requests that this Response be treated and denominated as a Motion to Dismiss and/or Motion for Summary Judgment and that this Honorable Court dismiss the Plaintiff's Complaint, with prejudice, and enter judgment in favor of Dr. El-Cid Burkett.

s/ Philip G. Piggott
Philip G. Piggott
ASB-4379-P67P
Email: ppiggott@starneslaw.com

Starnes & Atchison LLP
100 Brookwood Place, 7th Floor
P.O. Box 598512
Birmingham, AL 35259-8512
Telephone: (205) 868-6000
Fax: (205) 868-6099

Attorney for El-Cid v. Burkett, D.D.S.

CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2008, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system. In addition, I do hereby certify that I have caused a copy of the foregoing pleading to be mailed to the following non-AlaFile participant:

Stacey B. McKinney #155499
Bullock County Correctional Facility
P.O. Box 5107
Union Springs, AL  36089-5107

s/ Philip G. Piggott
Philip G. Piggott
ASB-4379-P67P
E-Mail:  pgp@starneslaw.com

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION**

| | | |
|---|---|---|
| **STACEY B. McKINNEY #155499,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 2:08-CV-90-NEF** |
| **SMALLWOOD PRISON DENTAL SERVICES, ET AL.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**SUPPLEMENTAL AFFIDAVIT OF EL-CID BUKETT, DDS**

STATE OF ALABAMA )
BULLOCK COUNTY )

BEFORE ME, the undersigned authority, in and for said County and State, personally appeared El-Cid V. Burkett, DDS, who, after being duly sworn by me under oath, deposes and says as follows:

1. My name is **El-Cid V. Burkett**. I am over the age of nineteen (19) years and have personal knowledge of all matters stated herein.

2. I am currently an Independent Contractor performing dentistry for Correctional Medical Services, Inc. ("CMS"). I am a licensed dentist in the State of Alabama and have been since 1997. I am also a licensed dentist in the states of New York and Kentucky.

3. Correctional Medical Services is a contractor that provides medical and dental services to inmates incarcerated within the Alabama Department of Corrections

and has been since November 1, 2007. I practice dentistry at the Bullock County Correctional Facility.

4. I am aware of the lawsuit that was filed against me, the dental hygienist, Tracy Archie, and Smallwood Prison Dental Services on February 6, 2008.

5. I am aware of the dental treatment that the Plaintiff, Stacey B. McKinney, has received while he has been an inmate at the Bullock County Correctional Facility.

6. On January 9, 2008, McKinney was seen by me in the dental facility at the Bullock County Correctional Facility and was fitted for upper partials due to missing teeth, specifically at locations 5, 6, 12 and 13.

7. On January 21, 2008, impressions were sent to the lab for partials to be made for McKinney.

8. McKinney returned to the dental facility on February 11, 2008, to be fitted for the partials. However, the partials did not fit correctly and, therefore further models were made for an upper partial for McKinney.

9. The second models for McKinney's upper partials have been forwarded to the lab and are currently in the process of being made. Once the partials have been returned to the dental facility at the Bullock County Correctional Facility, McKinney will be fitted with the partials.

10. A copy of the relevant medical records pertaining to McKinney's partials are attached hereto as Exhibit A.

11. I have never told McKinney that he did not qualify for the partials, nor have I ever retaliated against him for any reason whatsoever.

12. McKinney's partials were initially ordered prior to this lawsuit being filed and the upper partials are currently in the process of being made for McKinney.

13. There is a grievance process in place at the Bullock County Correctional Facility for each inmate to have the opportunity to submit healthcare services complaints and receive a reasonable response to his/her complaint in a timely manner. A copy of the grievance form is attached hereto as Exhibit B.

14. McKinney at no time has filed, completed or returned a grievance form for any dental treatment he has ever received at the Bullock County Correctional Facility.

15. I am familiar with the standard of care of Dentists for examining and treating patients such as Stacey B. McKinney. I have thoroughly reviewed and am familiar with the complete dental records pertaining to the dental care and treatment of McKinney during his incarceration at the Bullock County Correctional Facility.

16. It is my professional opinion, based on my review of the dental records pertaining to McKinney's care and treatment, and my education, training, and experience, that the dental care provided to McKinney has at all times met or exceeded the standard of care for Dentists practicing institutional dentistry within the State of Alabama.

FURTHER AFFIANT SAITH NOT.

Dated this the 20 day of May, 2008.

El-Cid V. Burkett DDS
El-Cid V. Burkett, DDS

STATE OF ALABAMA )
BULLOCK COUNTY )

I EL-CID V. Burkett DDS in and for said county and state, hereby certify that El-Cid V. Burkett, DDS, whose name is signed to the foregoing and who is known to me, acknowledged before me this day, that being informed of the contents thereof, voluntarily executed the same on the day of its date.

Given under my hand the seal of this 20 day of May, 2008.

[signature]
NOTARY PUBLIC

My Commission Expires: June 2010

{B0846259}

# EXHIBIT A TO SUPPLEMENTAL AFFIDAVIT OF EL-CID BURKETT



Case 2:08-cv-00090-MEF-TFM Document 32 Filed 05/01/2008 Page 17 of 24

PHS
PRISON
HEALTH
SERVICES
INCORPORATED

DEPARTMENT OF CORRECTIONS

# DENTAL RECORD TREATMENT

Services Rendered

| Date | Tooth # | Diagnosis | Treatment | Initials | Class |
|---|---|---|---|---|---|
| 10/12/05 | | | CC: Sore gum tissue in area of 12-13 extraction sites. Listerine rinsing & applied dressing. | [illegible] | |
| 4/26/07 | | | Reviewed Pt Med Hx; Pt c/o bleeding gums and pain: [illegible]; tetracycline given; Pt will get Peridex [illegible] once a day for [illegible] | ENB | |
| 5-2-07 | | | PM H, Scale, Floss, OHI, ODH, showed OOH, Heavy calc & stain, Smoker | [illegible] | [illegible] |
| Sept. 12, 07 | | | Reviewed Pt Med Hx; Ortho[illegible] mouth sores [illegible]; Orabase; Rincinol | ENB | |
| Sept 12, 07 | | | Reviewed Pt Med Hx; 2% lidocaine HCl 1.8cc (x1) c̄ Epi 1:100,000. Med given for pain | [illegible] | |
| Oct. 18, 07 | | | Reviewed Pt Med Hx; Pt c/o small sores in mouth [illegible]; Tx Rincinol mouthwash [illegible] advised pt if condition get worse or [illegible] | ENB | |
| Oct. 22, 07 | | | Reviewed Pt Med Hx; Pt c/o tongue been sore [illegible] of tongue at the tip & mouth sores yellowish c̄ red halo; Recurrent Aphthous stomatitis [illegible]; Rincinol mouthwash and Orabase; Pt [illegible] [illegible] for ~3 more days | ENB | |
| Nov. 15, 07 | | | Reviewed Pt Med Hx and Dent Hx; Pt c/o pain from mouth sores; Recurrent Aphthous ulcers [illegible] | ENB | |
| 1/9/08 | | | Reviewed Pt Med Hx; Recurrent Aphthous ulcer [illegible] upper lip and top of tongue Tx Rincinol and Orabase [illegible]; will [illegible] Pt condition | ENB | |
| 2/11/08 | | | Reviewed Pt Med and Dent Hx; Oral exam [illegible] Pt c/o gums being sore [illegible] Periodontal [illegible] with calculus [illegible] Scaling. Rinse c̄ [illegible] | ENB | |
| 3/10/08 | | | Reviewed Pt Med Hx; Pt c/o mouth sore [illegible] Pt to [illegible] sick call [illegible] appt [illegible] | ENB | |
| 3/19/08 | | | Reviewed Pt Med and Dental Hist. Aphthous sore [illegible] (L) [illegible] on mucosa; [illegible]; Rincinol and Orabase on lesions; white c̄ red halo, appears [illegible] [illegible] often | ENB | |
| 4/2/08 | | | Reviewed Med Hx; [illegible] Pt has some ulcers in the same place: one on [illegible] Chronic recurrent [illegible] ulcers [illegible] Pt to Dr [illegible] for work-up. Rincinol and Orabase [illegible] of the [illegible] mucosa [illegible] on tongue [illegible] (R) [illegible] | ENB | |

| PATIENT LAST NAME | FIRST | MIDDLE | DOB | R/S | ID NO. |
|---|---|---|---|---|---|
| McKinney | Stacy | | 10/7/62 | B/m | 155498 |

PHS-MD-70022

# CORRECTIONAL MEDICAL SERVICES

## DENTAL TREATMENT RECORD

### SERVICES RENDERED

| DATE | TOOTH | SURFACE | DENTAL SERVICES PROVIDED |
|---|---|---|---|
| 4/2/08 | FM | | Reviewed Pt Med Hx and read dent Hx; Pt return to dental for [illegible] |
| | | | with Rencinol, said mouth is feeling much better, will continue to Tx pt mouth |
| | | | for the ulcers, none on tongue as before lesions are smaller than before ERB |
| 4/7/08 | | | There are no lesions on Patient's skin; complaint no continuing eye problems ERB |
| 4/9/08 | | | Reviewed Med and Dent Hist; Chlorhexidine mouth wash to 1 month |
| | | | [illegible] keep on person. [illegible] a day - Pt wants RPD ERB |

# Invoice

Alabama Dental Lab
112 Prairie Avenue
Eutaw, Alabama 35441
(866)372-0223
**Tax Id 63-1248261**

| Date | Invoice # |
|---|---|
| 1/31/2008 | 501007 |

**Bill To**
Bullock Correctional Facility
5107 Hwy 82 East
Union Springs, AL 36089
Attention: H.S.A

RECEIVED
MAR 17 2008
By

APPROVED
BY
ACCT.#
COST CENTER#

| ITEM | DESCRIPTION | | | QTY | RATE | TOTAL |
|---|---|---|---|---|---|---|
| Lower Partial Denture | Starks, Donald AIS# 177017 | | | 1 | $80.00 | $80.00 |
| Upper Partial Denture | Parnell, Jimmy AIS# 223554 | | | 1 | $80.00 | $80.00 |
| Upper Full Denture | Davis, James AIS# 156948 | | | 1 | $80.00 | $80.00 |
| Upper Partial Denture | McKinney, Stacey AIS# 155499 | | | 1 | $80.00 | $80.00 |
| Upper Full Denture | Charles, William AIS# 133603 | | | 1 | $80.00 | $80.00 |
| Lower Partial Denture | Ismail Shabazz AIS# 155100 | | | 1 | $80.00 | $80.00 |
| Upper Full Denture | Asbill, John AIS# 116153 | | | 1 | $80.00 | $80.00 |
| Lower Full Denture | | | | 1 | $80.00 | $80.00 |
| **Shipping** | | | | 1 | $80.00 | $80.00 |
| | **Received** | | | | | |
| | 1/2/2008 | 177017 | Impression | | | |
| | 1/2/2008 | 223554 | Impression | | | |
| | 1/2/2008 | 156948 | Impression | | | $5.00 |
| | 1/3/2008 | 155499 | Impression | | | $5.00 |
| | 1/28/2008 | 133603 | Process | | | |
| | 1/28/2008 | 155100 | Impression | | | |
| | 1/28/2008 | 116153 | Impression | | | $5.00 |
| | **Sent** | | | | | |
| | 1/4/2008 | 177017 | Complete | | | |
| | 1/4/2008 | 223554 | Complete | | | $5.00 |
| | 1/4/2008 | 156948 | Try-in | | | |
| | 1/4/2008 | 155499 | Try-in | | | $5.00 |
| | 2/5/2008 | 133603 | Complete | | | |
| | 2/5/2008 | 116153 | Try-in | | | $5.00 |
| | 2/8/2008 | 155100 | Try-in | | | $5.00 |
| | **Received** | | | | | |
| | 1/10/2008 | 156948 | Process | | | |
| | 1/10/2008 | 155499 | Process | | | $5.00 |
| | 2/27/2008 | 155100 | Process | | | |
| | 2/27/2008 | 116153 | Process | | | $5.00 |
| | **Sent** | | | | | |
| | 1/17/2008 | 156948 | Complete | | | $5.00 |
| | 1/17/2008 | 155499 | Complete | | | $5.00 |
| | 3/12/2008 | 155100 | Complete | | | $5.00 |

| Any questions, please contact Michael Crump at (866)372-0223. Thank you. | Total | $700.00 |
|---|---|---|
| | **Total with pg. 2** | **$705.00** |

DEPARTMENT O[illegible] [illegible]RECTIONS

## Dental Laboratory

Inmates Name: Stacy McKinney  Inmates Number: 155499

Institution: Bullock CF  Date: 1/21/08

Doctor

Index #  Type of Case: upper RPD

Return for/by

- ☐ Custom Tray  Date
- ☐ Bite Rims  Date
- ☐ Try In  Date
- ☒ Process  Date

Comments: ① Process upper RPD ② finish and polish ③ Return to clinic for delivery to inmate patient

[signature] DDS  4896

Doctor's Signature  License #

UPPER  RIGHT  LEFT  1 2 3 4 5 6 7 8 9 10 11 12 13 14 15

Shade: -NA-

LOWER  LEFT  RIGHT  18 19 20 21 22 23 24 25 26 27 28 29 30 31

F-17

DENTAL

| # | NAME Feb 14-08 | AIS# | Sick Call: Screened | Sick Call: Treated | Sick Call: Refused | Sick Call: No Show | Scheduled: Treated | Scheduled: Refused | Scheduled: No Show | Non-Scheduled: Initial (new) Screening | Non-Scheduled: Treated | Non-Scheduled: No Show | X-Ray | Panorex |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Wisdom, Demarcus | | | | | | X | | | | | | | |
| 2 | Micheal Cooks | 254935 | | | | | X | | | | | | | |
| 3 | Green Darrick | | | | | | | | | | | | | |
| 4 | Wood Thomas | | | | | | X | | | | | | | |
| 5 | Jones Norman | | | | | | X | | | | | | | |
| 6 | McKinney Stacy | 155494 | | | | | X | | UPPER / Partial | | | | | |
| 7 | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | |
| | TOTAL | | | | | | | | | | | | | |

| # | Hygiene: Prophy | Hygiene: Deep Scale | Hygiene: Oral Hygiene Instruction | Amalgam: 1 Surface | Amalgam: 2 Surface | Amalgam: 3 Surface | Amalgam: 4 Surface | Composite: 1 Surface | Composite: 2 Surface | Composite: 3 Surface | Composite: 4 Surface | Base | Finish Restoration | Pulp Cap | Temporary Filling |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | 1 | | | | | | |
| 5 | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | | | | | |

| # | Surgery: Extraction | Surgery: Flap/Section | Surgery: Alveoplasty | Surgery: Suture/removal | Surgery: Incise/Drain | Surgery: Medicate | Endodontics: Open/Drain | Endodontics: File/Medicate | Endodontics: Completed Canals | Prosthetics: Impression | Prosthetics: Secondary Impression | Prosthetics: Bite/Vertical | Prosthetics: Try In | Prosthetics: Insert Full | Prosthetics: Insert Partial | Prosthetics: Denture Adjust | Prosthetics: Repair/Reline | Prosthetics: Post Op. Treatment | Prosthetics: Occlusal Adjust | LAB: Custom Tray | LAB: Bite Rims | LAB: Mount Case |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | | | | 2 | | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | | | | | | | | |
| 5 | 1 | | | | | 2 | | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | 1 | | | | | | | |
| 7 | | | | | | | | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | | | | | | | | | | | | |

25499

**DEPARTMENT OF CORRECTIONS**

**Alabama Dental Laboratory**

**Ph (866) 372-0223**

**Hm (205) 372-2695**

Inmates Name Stacy McKinney Inmates Number 155499

Institution Bullock Date 5/9/08

Dr. Burkett #03

Doctor

Index #

Type of Case Uppr RPD

Return for/by

- ☐ Custom Tray Date
- ☐ Bite Rims Date
- ☒ Try In Date
- ☐ Process Date

Comments: (1) Mount U/L Cast (2) Select and set teeth in wax (3) Return to dental Clinic for try in

Doctor's Signature [signature]

License # 4896

UPPER — RIGHT / LEFT

Shade 59

LOWER — LEFT / RIGHT



# ADOC
# SPECIAL NEEDS COMMUNICATION FORM

**Date:** May 8, 2008

**To:** D.O.C

**From:** Dentist

**Inmate Name:** Stacy McKinney **ID#:** 155499

**The following action is recommended for medical reasons:**

1. House in NA
2. Medical Isolation NA
3. Work restrictions NA
4. May have extra NA until NA
5. Other NA

**Comments:**

Rinse with 15 ml of Chlorhexidine twice a day after meals. Use for one month, May 8, 2008 until June 8, 2008

**Date:** 5/8/08 **MD Signature:** [signature] D.D.S. **Time:** 9:10

# EXHIBIT B TO SUPPLEMENTAL AFFIDAVIT OF EL-CID BURKETT

| CORRECTIONAL MEDICAL SERVICES<br><br>HEALTH SERVICES<br>POLICY & PROCEDURES MANUAL<br><br>BULLOCK CCF | NO: P-A-11 |
|---|---|
| | IMPLEMENTATION DATE: 11/01/07 |
| | REVISION: 1/23/08 |
| | REVISION: |
| | REVISION: |
| | DISTRIBUTION DATE: 1/23/08 |

| TITLE: GRIEVANCE MECHANISM | PAGE 1 OF 3 |
|---|---|

**SUBJECT:**

Grievance Mechanism (Important)

**PURPOSE:** Inmates are to have the opportunity to submit health services complaints and receive a reasonable response to their complaint within a timely manner.

**POLICY:**

1. Attempts will be made to resolve an inmate's complaint on an informal basis.
2. The inmate will be advised during orientation that complaints regarding healthcare can be resolved informally by communicating with the Health Services Administrator (or designee) before initiating a grievance process.
3. There is a formal mechanism in place for an inmate to file a grievance related to health services. The response process will be timely with the outcome documented.
4. Tracking of grievances and appeals will be recorded on the Inmate Grievance or Appeal Log and maintained for a minimum of three (3) years.
5. Inmate grievances will be reported in the MAC meetings to identify trends and opportunities to improve health services through corrective action.
6. Inmate grievances and appeals will be screened upon receipt by the Health Services Administrator (or designee) and recorded in the Inmate Grievance Log or Appeal Log including:
   a. Name
   b. Number or date of birth
   c. Date of grievance or appeal
   d. Date received
   e. Nature of grievance or appeal
   f. Grievance or appeal category

7. The original documents will be kept on file in the Health Services Unit. Grievance or appeal forms or any copies will not be filed in the inmate Medical Record.

8. The Inmate Grievance and/or Appeal Log will be completed to include:

   a. Date of interview

   b. Date of response

   c. Nature of response

   d. Staff responding

   e. Resolution category

9. Grievance or appeal responses will be reviewed and completed within five (5) business days by the Health Services Administrator (H.S.A.) or their designee.

10. Health staff collects submitted grievance forms each day from the locked sick call collection boxes located throughout the population areas in facility. These are collected at the same time the sick call request forms are collected from the locked boxes. The visiting nurses in the single cell areas collect grievance forms submitted by the inmates housed in the single cell areas while rounding in this area each day.

11. The forms are taken to the health services unit and logged in as received by the health services Administrative Assistant (AA). The Administrative Assistant then provides the form(s) to the Health Services Administrator or their designee for review and completion. If the AA is not on duty the charge nurse on-duty will review each submitted grievance or appeal form for the possibility of urgent need intervention. If there is no urgent response indicated the collected forms will be placed in the AA's in-box for next business day processing purposes.

11. The H.S.A. or their designee may conduct a record review in preparing a written response to the grievance or may determine a face-to-face encounter with the inmate is necessary prior to providing a return written response.

12. Once the grievance response has been written onto the grievance form, the H.S.A. or designee returns the grievance form to the AA to appropriately annotate in the grievance or appeal log.

13. Once the AA has annotated the grievance log with the H.S.A. or designee written response information, the AA takes the form (the yellow copy), folds it, staples it, and writes the inmate name on the outside, and places it into the return inmate mailbox. Security distributes the responses to the applicable inmate.

14. Should the inmate appeal the grievance response, the appeal will be answered, in writing, by the HSA or their designee within five (5) working days. The appeal log must be appropriately annotated with the date of receipt, etc. The HSA or designee may or may not conduct a face to face interview with the inmate prior to a formal response to the appeal.

15. Once the HSA or their designee has conducted the appropriate review and written a response, the appeal form with response is taken to AA to be logged onto the appeal log. The form is then folded, stapled and the AA writes the inmate name on the outside and then places it into the return-to-inmate mailbox.

16. Grievances and appeals will be reviewed as part of the Quality Improvement Committee. Observation of trending factors will be noted.

References:

National Commission on Correctional Health Care: Standards for Health Services in Prisons, 2003, P-A-11

American Correctional Association: Standards for Adult Correctional Institutions, 4th Edition, 2003. 4-4394

# CORRECTIONAL MEDICAL SERVICES

## INMATE GRIEVANCE LOG

Facility____________________ Month/Year____________________

| INMATE NAME | ID # / DOB | DATE OF GRIEVANCE | DATE RECEIVED | NATURE OF GRIEVANCE | * GC | DATE OF INTERVIEW | DATE OF RESPONSE | NATURE OF RESPONSE | STAFF RESPONDING | ** RC |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

*G.C. = Grievance Categories

| | | | |
|---|---|---|---|
| I | Dissatisfied with Quality of Medical Care | VI | Delay in Health Care Provided |
| II | Dissatisfied with Quality of Dental Care | VII | Problems with Medication |
| III | Dissatisfied with Quality of Mental Health Care | VIII | Request to be Seen |
| IV | Dissatisfied with Response to Non-Medical Request | IX | Request for Off-Site Specialty Care |
| V | Conduct of Healthcare Staff | X | Other |

**R.C. = Resolution Categories

| | |
|---|---|
| A. | Explanation |
| B. | Corrective Action |
| C. | Communication Clarification |
| D. | Unresolved |

# CORRECTIONAL MEDICAL SERVICES

## INMATE APPEAL LOG

Facility____________________ Month/Year____________________

| INMATE NAME | ID # / DOB | DATE OF GRIEVANCE | DATE APPEAL RECEIVED | NATURE OF APPEAL | * GC | DATE OF INTERVIEW | DATE OF RESPONSE | NATURE OF RESPONSE | STAFF RESPONDING | ** RC |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

*G.C. = Grievance Categories

| | | | |
|---|---|---|---|
| I | Dissatisfied with Quality of Medical Care | VI | Delay in Health Care Provided |
| II | Dissatisfied with Quality of Dental Care | VII | Problems with Medication |
| III | Dissatisfied with Quality of Mental Health Care | VIII | Request to be Seen |
| IV | Dissatisfied with Response to Non-Medical Request | IX | Request for Off-Site Specialty Care |
| V | Conduct of Healthcare Staff | X | Other |

**R.C. = Resolution Categories

| | |
|---|---|
| A. | Explanation |
| B. | Corrective Action |
| C. | Communication Clarification |
| D. | Unresolved |