**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **STACY B. McKINNEY (AIS # 155499),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:08-CV-90-MEF** |
| | § | |
| **SMALLWOOD PRISON DENTAL** | § | |
| **SERVICES, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**SPECIAL REPORT OF DEFENDANTS SMALLWOOD PRISON DENTAL SERVICES,
INC. AND TRACIE ARCHIE, R.D.H.**

COME NOW Defendants, Smallwood Prison Dental Services, Inc. (identified in Plaintiff's complaint as "Smallwood Prison Dental Services") and Tracie Archie, R.D.H. (incorrectly identified in Plaintiff's complaint as "Tracy Arochie"), and in response to this Honorable Court's order present the following Special Report with regard to this matter:

## I.   INTRODUCTION

The Plaintiff, Stacey McKinney (AIS# 155499) is an inmate currently confined at Bullock County Correctional Facility located in Union Springs, Alabama.  (See Compl.).  On February 8, 2008, Mr. McKinney filed a complaint against Smallwood, the company that formerly contracted with Prison Health Services, Inc. ("PHS") to provide dental care to inmates at Bullock; and Tracie Archie, R.D.H., a dental hygienist formerly employed by Smallwood, alleging that these Defendants violated his constitutional rights by denying him appropriate dental treatment.  (See Compl.).  Specifically, McKinney claims (1) that Ms. Archie failed to treat him appropriately while cleaning his teeth in either October or November 2007 thus causing gum pain and bleeding and (2) that Smallwood is liable for Ms. Archie's actions because she was

1

not licensed to practice as a dental hygienist in either October or November 2007. (Id.) McKinney demands one hundred fifty thousand dollars ($150,000.00) in punitive and compensatory damages. (Id.)

As directed, the Defendants have undertaken a review of McKinney's claims to determine the facts and circumstances relevant thereto. At this time, the Defendants are submitting this special report, which is supported by a certified copy of McKinney's dental records (attached to Doc. 32 as Ex. "1") and the affidavit of Tracie Archie, R.D.H. (attached hereto as Ex. "A"). These evidentiary materials demonstrate that McKinney has been provided appropriate dental care at all times, and that the allegations in his complaint are without merit.

## II.    NARRATIVE SUMMARY OF FACTS

### A.    Procedural Summary

At all pertinent times, McKinney (AIS # 155499) has been incarcerated as an inmate at Bullock County Correctional Facility. (See Compl.). McKinney filed a complaint in this action alleging (1) that Ms. Archie acted with deliberate indifference in either October or November 2007 while cleaning his teeth causing his gums to bleed, and (2) that Smallwood is responsible for the alleged injury by failing to ensure that Ms. Archie was licensed to practice as a dental hygienist in either October or November 2007. (See Compl.). Mr. McKinney's allegations against Ms. Archie are unfounded, as (1) Ms. Archie did not treat McKinney in either October or November 2007, and (2) the care provided to McKinney by Ms. Archie was appropriate. (See Ex. "A"). Moreover, since Ms. Archie did not cause the injury made the basis of McKinney's complaint, he has no standing to assert any claim against Smallwood. McKinney's claims are also due to be dismissed for his failure to satisfy Bullock County Correctional Facility's informal grievance procedure pursuant to the Prison Litigation Reform Act (PLRA).

2

B.     **Factual Summary**

Ms. Archie received a degree in dental hygiene from the University of Alabama at Birmingham in June of 1999.  (See Ex. "A").  She subsequently became licensed as a dental hygienist on June 25, 1999 and was employed as a dental hygienist with Smallwood Prison Dental Services, Inc. from April 11, 2007 through October 31, 2007.  (Id.)

During her employment with Smallwood, Ms. Archie was responsible for providing dental services to inmates at a number of correctional facilities including Bullock County Correctional Facility, Ventress Correctional Facility, Easterling Correctional Facility, Fountain Correctional Facility and Holman Correctional Facility.  (Id.)  As relevant here, she treated Mr. McKinney at Bullock County Correctional Facility located in Union Springs, Alabama.  (Id.)

Mr. McKinney has alleged that Ms. Archie failed to provide him with appropriate dental care and treatment in either October or November 2007.  (Id.)  In reviewing McKinney's dental records, Ms. Archie determined that she did not provide this inmate with dental care during October or November 2007, as alleged.  (Id.)  She provided this inmate with dental treatment on a single date, May 2, 2007, approximately five months before he was provided the dental care made the basis of the complaint.  (Id.)

On May 2, 2007, Mr. McKinney presented to the healthcare unit for dental cleaning.  (Id.)  Ms. Archie began his treatment by asking him to describe his past medical history (PMH).  (Id.)  Specifically, she inquired with regard to any medications he was taking as well as his subjective determination of illness or injury.  (Id.)  Mr. McKinney made no relevant subjective complaints.  (Id.)  She subsequently cleaned and flossed his teeth.  (Id.)  After cleaning and flossing his teeth, Ms. Archie provided Mr. McKinney with oral hygiene instruction (OHI) including how and how often to brush.  (Id.)  She noted that Mr. McKinney had poor oral

3

hygiene (POH) and, as a result, stressed the importance of good oral hygiene (GOH) instructing him that he needed to do a better job of brushing and/or flossing. (Id.) She noted the existence of heavy calculus development and that his teeth were stained as a result of smoking. (Id.) Mr. McKinney made no complaints for excessive pain or bleeding. (Id.) His dental records indicate that he was not seen again for dental treatment until September 12, 2007, approximately four months later. (Id.)

Based on Ms. Archie's review of Mr. McKinney's dental records, and on her personal knowledge of the treatment provided to him, it is her opinion that all of his dental conditions and complaints have been evaluated and treated in a timely and appropriate fashion. (Id.) At all times, Ms. Archie and the other healthcare providers at Bullock have exercised the same degree of care, skill, and diligence as other similarly situated healthcare providers would have exercised under the same or similar circumstances. (Id.) In other words, it is her opinion that the appropriate standard of care has been adhered to at all times in providing dental care, evaluation, and treatment to this inmate. (Id.)

At no time has Ms. Archie or any of the dental staff at Bullock County Correctional Facility denied Mr. McKinney any needed dental treatment, nor have they ever acted with deliberate indifference to any serious medical or dental need of Mr. McKinney. (Id.) At all times, Mr. McKinney's dental complaints and conditions have been addressed as promptly as possible under the circumstances. (Id.)

### III.    DEFENSES

Defendants assert the following defenses to the Plaintiff's claims:

1.      Defendants deny each and every material allegation contained in the Plaintiff's complaint, or amended Complaint, and demand strict proof thereof.

2.    Defendants plead not guilty to the charges in the Plaintiff's complaint.

3.    The Plaintiff's complaint fails to state a claim against the Defendants for which relief can be granted.

4.    Defendants affirmatively deny any and all alleged claims by the Plaintiff.

5.    The Plaintiff is not entitled to any relief requested in the complaint.

6.    Defendants plead the defense of qualified immunity and aver that the actions taken by the Medical Defendants were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

7.    Defendants are entitled to qualified immunity and it is clear from the face of the Complaint that the Plaintiff has not alleged specific facts indicating that the Defendants have violated any clearly established constitutional right.

8.    Defendants cannot be held liable on the basis of respondeat superior, agency, or vicarious liability theories.

9.    The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

10.    The allegations contained in the Plaintiff's complaint against the Defendants sued in their individual capacities, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities.  See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

11.    Defendants plead all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

12.    Defendants aver that they were at all times acting under color of state law and, therefore, they are entitled to substantive immunity under the law of the State of Alabama.

5

13.    Defendants plead the general issue.

14.    This Court lacks subject matter jurisdiction due to the fact that even if the Plaintiff's allegations should be proven, the allegations against the Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

15.    The Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

16.    Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

17.    Defendants plead the defense that at all times in treating Plaintiff they exercised the same degree of care, skill, and diligence as other physicians and nursing staff would have exercised under similar circumstances and that at no time did they act toward the Plaintiff with deliberate indifference to a serious medical need.

18.    Defendants plead the affirmative defense that the Plaintiff's complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render him liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

19.    Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

20.    Defendants plead the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

21.    Defendants plead the affirmative defense that they are not responsible for the policies and procedures of the Alabama Department of Corrections.

22.    Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

23.    Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against them and that any such award would violate the United States Constitution.

24.    Defendants adopt and assert all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

25.    The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a).  The Plaintiff has failed to pursue the administrative remedies available to him.  See Cruz v. Jordan, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning Defendants' deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

26.    The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of Plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from the Defendants who are entitled to immunity.

27.    The Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e).

28.    The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

29.    Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious,

7

fails to state a claim upon which relief may be granted, or seeks money damages from the Medical Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

30.    Defendants assert that the Plaintiff's complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and requests this Court pursuant to 42 U.S.C. § 1988 to award these Defendants reasonable attorney's fees and costs incurred in the defense of this case.

31.    The Plaintiff's claims are moot because the events which underlie the controversy have been resolved.  See Marie v. Nickels, 70 F., Supp. 2d 1252 (D. Kan. 1999).

## IV.  ARGUMENT

### A.    Plaintiff McKinney has failed to establish evidence necessary to maintain a claim of deliberate indifference pursuant to § 1983.

It is well established that a court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint.  Romero v. City of Clanton, 220 F. Supp. 2d 1315, 1315 (M.D. Ala. 2002), (citing, Hison v. King & Spalding, 467 U.S. 69, 73 (1984).  "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(3), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 1345, 1358 (M.D. Ala. 1999).  As noted above, a careful review of McKinney's dental records reveals that Ms. Archie did not provide dental care to McKinney in either October or November 2007, as alleged. (See Ex. "A").  Since Ms. Archie is not responsible for the harm or injury alleged, she is due to dismissed from this action.  (Id.)  Moreover, since Ms. Archie did not injure McKinney, his

claim against Smallwood -- that it is liable for the injury alleged by failing to ensure Ms. Archie was licensed -- is due to be dismissed as well.

Smallwood Prison Dental Services, Inc. contracted with Prison Health Services, Inc. (PHS) to provide dental care to inmates at Bullock County Correctional Facility (and other correctional facilities in Alabama) prior to November 1, 2007. (<u>See</u> Affidavit of El-Cid Bukett, D.D.S., Doc. 11-2). While McKinney fails to articulate the legal basis of his claim against Smallwood, it is clear that he purports to state a claim against it as a third-party beneficiary to the contract between Smallwood and PHS regarding the manner in which dental hygienists are to be utilized in providing dental services to inmates at Bullock County Correctional Facility in either October or November 2007. (<u>See</u> Compl.)

Since Ms. Archie did not treat McKinney, and thus, did not cause him injury, he has no standing to maintain a claim against Smallwood regarding the status of Ms. Archie's licensure. "A plaintiff may not pursue a general allegation against a defendant unless the plaintiff shows that he, *personally,* suffered some injury as a result of the defendant's conduct. <u>See</u>, <u>e.g.</u>, <u>Farrakhan v. Washington</u>, 338 F.3d 1009, 1022 & n.20 (9th Cir. 2003) (emphasis in original). <u>See also</u> <u>AFM Corporation v. Southern Bell Telephone and Telegraph Co</u>., 515 So. 2d 180 (Fla. 1987) and <u>Brenner v. Professional Service Industries, Inc</u>., 710 F. Supp. 1336, 1338 (M.D. Fla. 1989) (Where Plaintiffs are third-party beneficiaries to a contract, a cause of action for negligence in tort is *not available*, without a separate allegation of personal injury or property damage resulting from the breach)." The injury in question must be an invasion of some right that belongs to Plaintiff and must be "actual or imminent, not conjectural or hypothetical." <u>Id</u>. and <u>Haubrich v. MacDonald</u>, 2006 U.S. Dist. LEXIS 75361 (D. Mont. Sept. 1, 2006).

9

McKinney has failed to show that Ms. Archie was the individual responsible for causing him to suffer injury. (See Ex. "A"). Since Ms. Archie was not responsible for causing McKinney injury, McKinney does not have standing to hold Smallwood liable.

The evidence shows that the care Ms. Archie provided to McKinney was, indeed, appropriate at all times. (See Ex. "A"). As such, all of the allegations contained within McKinney's complaint are either inconsistent with his dental records, or, in the alternative, are claims for which no relief may be granted. (Id.)

In order to state a cognizable claim under the Eighth Amendment, McKinney must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1954 (11th Cir. 1999); Palermo v. Correctional Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, McKinney must allege and prove that he suffered from a serious medical need, that the Defendants were deliberately indifferent to his needs, and that the suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001) and Palermo, 148 F. Supp. 2d ad 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." Id. (citations omitted).

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See Estelle, 429 U.S. at 105; McElligott, 182 F.3d at 1254; Hill, 40 F.3d 1176, 1186 (11th Cir. 1994);

Palermo, 148 F. Supp. 2d at 1342.  Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment.  Estelle, 429 U.S. at 106-108.

The Defendants may only be liable if they had knowledge of McKinney's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed.  Estelle, 429 U.S. at 104-105.  Obviously, McKinney cannot carry this burden.  The evidence submitted with this special report clearly shows that the Defendants did not act intentionally or recklessly to deny or delay dental care, or to interfere with any treatment which was prescribed or directed.  The evidence demonstrates, to the contrary, that McKinney's claims are without merit, that his dental conditions were at all times adequately and timely addressed, and that he was not denied any necessary dental treatment.  (See Ex. "A").  Appropriate standards of care were followed at all times.  The evidence, in other words, shows without dispute that all of McKinney's dental conditions were thoroughly evaluated, treated, and monitored in a timely and appropriate manner.  (Id.)  These facts clearly disprove any claim that the Defendants acted intentionally or recklessly to deny treatment or care.  (Id.)

The Defendants are, further, entitled to qualified immunity from all claims asserted by McKinney in this action.  There is no argument that the Defendants were not acting within the scope of their discretionary authority.  See Eubanks v. Gerwen, 40 F. 3d 1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994).  Because the Defendants have demonstrated that they were acting with the scope of their discretionary authority, the burden shifts to McKinney to show that the Defendants violated clearly established law based upon objective standards.  Eubanks, 40 F. 3d at 1160.  The Eleventh Circuit requires that before

11

the Defendants' actions can be said to have violated clearly established constitutional rights, McKinney must show that the right allegedly violated was clearly established in a fact-specific, particularized sense.  Edwards v. Gilbert, 867 F.2d 1271, 1273 (11ᵗʰ Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11ᵗʰ Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual.  See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)).  The question that must be asked is whether the state of the law in 2008 gave the Defendants fair warning that his alleged treatment of McKinney was unconstitutional.  Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

Therefore, to defeat summary judgment, McKinney must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the Defendants to the fact that this practice or policy violates his constitutional rights.  See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994).  In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances."  Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11ᵗʰ Cir. 1994).  The Defendants submit that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that McKinney's constitutional rights have been violated.

12

All of McKinney's medical needs have been addressed or treated. The Defendants have provided McKinney with appropriate dental care at all times. (See Ex. "A").

**B.**    **Plaintiff McKinney has failed to state a claim against the Defendants for medical malpractice.**

In addition to any claims for "deliberate indifference," McKinney does not have any claim for "medical malpractice" against the Defendants. An action for medical malpractice is construed and governed by the Alabama Medical Liability Act ("AMLA"), Ala. Code § 6-5-541 et seq. (1975). The AMLA applies to any action for injury or damages or wrongful death, whether in contract or in tort, against a healthcare provider for breach of the standard of care. See Ala. Code § 6-5-548(a). The AMLA also defines the "standard of care" owed by physicians. See Ala Code § 6-5-541(2).

In addition to the pleading requirements set forth in Rule 8(a) of the *Alabama Rules of Civil Procedure*, the AMLA[1] imposes a heightened pleading requirement upon persons attempting to seek redress under the Act. Ala. Code § 6-5-551 states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a healthcare provider for the standard of care, whether resulting from acts or omissions in providing healthcare, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the perimeters of discovery in all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the healthcare provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be at least ninety (90) days before trial. **A complaint which fails to include such detailed specification of**

---

[1]   The AMLA applies to "healthcare provider[s]," which includes any "medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other healthcare provider as those terms are defined in § 6-5-481." Ala. Code § 6-5-451(1) (1975). Ala. Code § 6-5-481 defines "other healthcare providers" as including any "professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of healthcare services." See Ala. Code § 6-5-481(8) (1975).

13

> **each act or omission shall be subject to dismissal for failing to state a claim upon which relief may be granted.** Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introduction at trial evidence of any other act or omission.

(Emphasis added).

The requirements of § 6-5-551 are clear and specific regarding the matters which must appear in a complaint asserting a claim under the AMLA. Id. Indeed, § 6-5-551 mandates that any complaint failing to comply with this heightened pleading requirement "shall be subject to dismissal for failing to state a claim upon which relief may be granted." (Id.) Moreover, courts interpret this requirement as mandating that a complaint asserting an AMLA claim "focused … on the individual practitioner whose specific action is alleged to have fallen below the standard of care." See Husby v. South Alabama Nursing Home, Inc., 717 So. 2d 750, 753 (Ala. 1998). Considering all of these requirements, McKinney's complaint fails to provide the level of factual detail necessary to institute and/or maintain any action under the AMLA. Therefore, his complaint must fail.

Under Rule 56 of the *Alabama Rules of Civil Procedure*, summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In the specific context of a medical malpractice action, such as the present, Alabama courts follow a more specialized procedure:

> [O]nce the defendant offers expert testimony in [its] behalf (albeit [its] own opinion), establishing lack of negligence, the defendant is entitled to summary judgment, unless the plaintiff counters the defendant's evidence with expert testimony in support of the plaintiff's claim." Pettigrew v. Leroy F. Harris, M.D., P.C., 631 so. 2d 839 (Ala. 1993). See also Ala. Code § 6-5-548 (outlining plaintiff's burden of proving defendant's negligence by way of expert testimony from similarly situated health care providers); and § 6-5-549 (substantial evidence is standard of proof required for summary judgment motion).

Ms. Archie, in her affidavit, fully set forth that the care and treatment provided to McKinney was appropriate and within the standard of care. (See Ex. "A").

The Defendants' submission shifts the burden to McKinney to produce substantial evidence in the form of competent expert testimony that the care and treatment of McKinney fell below the applicable standard of care. See e.g., Swendson v. Gross, 530 So. 2d 764 (Ala. 1988) (in a professional malpractice case, once the defendant offers expert testimony in his behalf establishing a lack of negligence, the defendant is entitled to summary judgment unless the plaintiff counters the defendant's evidence with expert testimony in support of the plaintiff's claim); Ala. Code § 6-5-549. The only proper expert testimony before this Court regarding McKinney's allegations of substandard care against these Defendants is the affidavit of Ms. Archie which affirmatively establishes that she has not caused or contributed to any problems being alleged by McKinney. (See Ex. "A").

Under the AMLA, the Defendants are under a duty to "exercise such reasonable care, diligence and sill as [health care providers] … in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case." See Ala. Code § 6-5-548(a); Keelber v. Winfield Carraway Hospital, 531 So. 2d 841 (Ala. 1988); Fain v. Smith, 479 So. 2d 1150 (Ala. 1985). Furthermore, the Alabama Supreme Court has repeatedly held that "[i]t is well settled that when the defendant in a medical malpractice case moves for summary judgment and makes the requisite *prima facie* showing of non liability: … the plaintiff, in order to avoid the entry of summary judgment, … must present substantial evidence indicating that the alleged negligence … probably caused the injury." See Ala. Code § 6-5-548. See also Dews v. Mobile Infirmary Association, 659 So. 2d 61 (Ala. 1995); McAffee v. Baptist Medical Center, 651 So. 2d 265 (Ala. 1994).

15

Under Alabama law, except when the act or omission complained of is within the understanding of the average layman, or when a plaintiff relies on an authoritative medical treatise or is himself or herself a qualified expert, the plaintiff in a medical malpractice action must present expert testimony "to establish the degree of care, skill and diligence used by similarly situated healthcare providers in the same general line of practice." See Ex parte Health South Corp., 2002 WL 31663618 (Ala.); Leonard v. Providence Hospital, 590 So. 2d 906 (Ala. 1999); Pruitt v. Zeiger, 590 So. 2d 236 (Ala. 1991). McKinney has to present expert testimony establishing that Ms. Archie breached the standard of care and "a proximal causal connection between the … act or omission constituting the breach and the injury sustained by the plaintiff." Pruitt at 238 (citing Bradford v. McGee, 534 So. 2d 1076 (Ala. 1998)).

The AMLA also sets forth the plaintiff's burden of proof in a medical malpractice action. A medical malpractice plaintiff has the burden of proving by substantial evidence that the defendant health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and practice in a like case. See Ala. Code § 6-5-548(a). A "similarly situated health care provider" is defined by the AMLA at Ala. Code § 6-5-548(b). To be considered a "similarly situated health care provider," the individual must have "practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of standard of care occurred." See Ala. Code § 6-5-548(b)(3). A health care provider may testify as an expert witness in a medical malpractice action only if he is a similarly situated health care provider. Ala. Code § 6-5-548(e).

Since McKinney has failed to establish appropriate expert testimony disputing Ms. Archie, he cannot meet his burden of proof.  His claims for medical negligence are, thus, due to be dismissed.

**C.**     **Plaintiff McKinney has failed to follow the required grievance procedures for assessing medical complaints prior to filing his lawsuit; therefore, the Prison Litigation Reform Act of 1995 requires the immediate dismissal, with prejudice, of his complaint.**

The Bullock County Correctional Facility has in place a grievance mechanism that allows inmates the opportunity to submit health services complaints and receive a reasonable response to their complaint within a timely manner.  A copy of the grievance mechanism is attached to the affidavit of Dr. Burkett, which is attached to the Special Report of Dr. Burkett as Ex. "1." McKinney has at no time filed any grievance with Bullock regarding any of the allegations contained in his complaint as related to Ms. Archie or Smallwood.

Prisoner litigation has become an expensive problem for states and the federal government.  Because of the problems associated with frivolous litigation, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in order to control frivolous prisoner lawsuits. The Act contains multiple and mandatory provisions that <u>require</u> the dismissal of complaints identical to those asserted by McKinney.

The PLRA defines prisoners as follows:

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions or parole, probation, pretrial release, or diversionary program.

<u>See</u> 42 U.S.C. § 1997(e)(h).

McKinney admits to being incarcerated in his complaint and, therefore, meets the definition of "prisoner" as defined by the PLRA.  <u>See</u> <u>Boyd v. Corrections Corp. of America</u>,

380 F. 3d 989 (6th Cir. 2004).  Moreover, the PLRA requires a prisoner to exhaust all internal administrative remedies prior to filing suit.  The PLRA requires that the court, on its motion or the motion of a defendant, dismiss any action with respect to prisoner conditions or medical treatment upon failing to exhaust these remedies.  See 42 U.S.C. § 1997(3)(a).  Those provisions state as follows:

> (a)  Applicability of administrative remedies.
>
> No action shall be brought with respect to prison conditions under § 1983 of this title, only under federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
>
> (b) The failure of state to adopt or adhere to administrative grievance procedure.
>
> The failure of a state to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under 1997(a) or 1997(c) of this title.
>
> (c)  Dismissal
>
> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

See 42 U.S.C. § 1997(e)(a).

"Administrative remedies" pursuant to the PLRA constitute prison or jail grievance procedures such as those identified in this special report.  Before filing suit, the prisoner/plaintiff must submit his claim through this procedure and the grievance must address the specific issue upon which the suit is based.  Failure to strictly follow these procedures requires dismissal of the action.  Even if the prisoner/plaintiff has no knowledge regarding the existence of the

procedures, this does not relieve the requirement.  See <u>Zolicoffer v. Scott</u>, 55 F. Supp. 2d 1372 (N.D. Ga. 1999), <u>aff'd without opinion</u>, 252 F. 3d 440 (11th Cir. 2001)).

In this particular case, McKinney has failed to follow the applicable required administrative procedures that exist at the Bullock County Correctional Facility. These procedures require McKinney to seek administrative relief of his claim before seeking court intervention.  McKinney must exhaust all internal administrative remedies before seeking redress for his complaints within the legal system.  Adhering to these procedures serves a two-fold interest: (1) it allows McKinney the opportunity to advise correctional officers or healthcare employees regarding his concerns; and (2) it permits internal procedures to address and alleviate concerns raised by prisoners through this process.  More importantly, it eliminates frivolous litigation by giving both prisoner and the correctional facility the opportunity to be aware of complaints and address them prior to expensive litigation. His failure to follow these internal procedures concerning his medical grievances require his claim to be dismissed with prejudice. See <u>Woodford v. NGO</u>, 126 S. Ct. 238 (2006).

**CONCLUSION**

McKinney's complaint, as amended, is due to be denied.  McKinney's requests for relief are without merit.   These Defendants have demonstrated with substantial evidence and appropriate precedent that there is no genuine issue of material fact related to any violation, constitutional or otherwise, and that they are, therefore, entitled to judgment in their favor as a matter of law.

Finally, pursuant to the Court's order, these Defendants request that this Special Report be treated and denominated as a motion to dismiss and/or a motion for summary judgment.  The Defendants have demonstrated both through substantial evidence and appropriate precedent that

19

there is not any genuine issue of material facts relating to any constitutional or state law violation.

    Respectfully submitted this the 2nd day of <u>June, 2008</u>.

<u>s/ R. Brett Garrett</u>       
R. BRETT GARRETT (GAR085)
Attorney for Defendants, Smallwood Prison
Dental Services, Inc. and Tracie Archie,
R.D.H.

<u>Of Counsel</u>:
Rushton, Stakely, Johnston & Garrett, P.A.
PO Box 270
Montgomery, AL 36101-0270
334-206-3260 (phone)
334-481-0808 (fax)
bg@rsjg.com (email)

## CERTIFICATE OF SERVICE

    I hereby certify that on <u>June 2, 2008</u>, I served a copy of the foregoing, either electronically or by U.S. Mail, postage prepaid and properly addressed, to the following:

    Stacey B. McKinney (AIS # 155499)
    BULLOCK COUNTY CORRECTIONAL FACILITY
    PO Box 5107
    Union Springs, AL 36089-5107

    Philip Guy Piggott, Esq.
    STARNES & ATCHISON
    PO Box 598512
    100 Brookwood Place
    Birmingham, AL 35259-8512

<u>s/ R. Brett Garrett</u>       
Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STACY B. McKINNEY (AIS # 155499),    §
                                     §
        Plaintiff,                   §
                                     §
v.                                   §       CIVIL ACTION NO. 2:08-CV-90-MEF
                                     §
SMALLWOOD PRISON DENTAL              §
SERVICES, et al.,                    §
                                     §
        Defendants.                  §

### AFFIDAVIT OF TRACIE ARCHIE, R.D.H.

BEFORE ME, Rachel E Roscoe a notary public in and for said County

and State, personally appeared **TRACIE ARCHIE**, and being duly sworn, deposed and says on

oath that the averments contained in the foregoing are true to the best of her ability, information,

knowledge and belief, as follows:

"My name is Tracie Archie. I am over twenty-one years of age. I received a degree in

dental hygiene from the University of Alabama at Birmingham in June of 1999. I subsequently

became licensed as a dental hygienist on June 25, 1999 and was employed as a dental hygienist

with Smallwood Prison Dental Services, Inc. ("Smallwood") from April 11, 2007 through

October 31, 2007.

During my employment with Smallwood, I was responsible for providing dental services

to inmates at a number of correctional facilities including Bullock County Correctional Facility,

Ventress Correctional Facility, Easterling Correctional Facility, Fountain Correctional Facility

and Holman Correctional Facility. I treated Mr. McKinney at Bullock County Correctional

1



Facility located in Union Springs, Alabama.

It is my understanding that Mr. McKinney has alleged in this action that I failed to provide him with appropriate dental care and treatment in either October or November 2007. In reviewing McKinney's dental records, I have determined that I did not provide this inmate with dental care during October or November 2007 as alleged. I provided this inmate with dental treatment on a single date, May 2, 2007, approximately five months before the dental care made the basis of Mr. McKinney's complaint.

On May 2, 2007, Mr. McKinney presented to the healthcare unit for dental cleaning. I began his treatment by asking him to describe his past medical history (PMH). Specifically, I inquired with regard to any medications he was taking as well as his subjective determination of illness or injury. Mr. McKinney made no relevant subjective complaints. I subsequently cleaned and flossed his teeth. After cleaning and flossing his teeth, I provided Mr. McKinney with oral hygiene instruction (OHI) including how and how often to brush. I noted that Mr. McKinney had poor oral hygiene (POH) and, as a result, stressed the importance of good oral hygiene (GOH) instructing him that he needed to do a better job of brushing and/or flossing. I noted the existence of heavy calculus development and that his teeth were stained as a result of smoking. Mr. McKinney made no complaints for excessive pain or bleeding. His dental records indicate that he was not seen again for dental treatment until September 12, 2007, approximately four months later.

Based on my review of Mr. McKinney's dental records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his dental conditions and complaints have been evaluated and treated in a timely and appropriate fashion. At all times, myself and the

2

other healthcare providers at Bullock have exercised the same degree of care, skill, and diligence as other similarly situated healthcare providers would have exercised under the same or similar circumstances. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing dental care, evaluation, and treatment to this inmate.

At no time have I or any of the dental staff at Bullock County Correctional Facility denied Mr. McKinney any needed dental treatment, nor have we ever acted with deliberate indifference to any serious medical or dental need of Mr. McKinney. At all times, Mr. McKinney's dental complaints and conditions have been addressed as promptly as possible under the circumstances."

Further affiant sayeth not.

**TRACIE ARCHIE**

STATE OF ALABAMA          )
                          )
COUNTY OF  Pike           )

Sworn to and subscribed before me on this the  2  day of  June , 2008.

Notary Public

My Commission Expires
RACHEL HASCOE
Notary Public, AL State at Large
My Comm. Expires Nov. 19, 2008

3